Good morning, your honors. One thing I wanted to say to both parties on behalf of the panel is that to the extent that rehave issues are raised, we will of course listen to your argument, but there are prior panels that are dealing with rehave issues, and they have precedents, and so to the extent that this case implicates rehave issues, we will have to wait to see what these prior panels do, and we will be bound by what those panels do to the extent that they rule in a way that covers or implicates your case. I appreciate that, Judge Katzman. I do want to start off on rehave, though, and just make a couple of points that I think are important regarding my client's case. I'm thinking about, for instance, U.S. v. Baldy, that's dealing with a plea. Here we have a conviction. So a couple of things in terms of the government's argument. First, about waiver. One of the things I really, when I look at this issue, it seems you can't waive something that you couldn't see. So for instance, you know, in physics, you discover a new particle. Doesn't mean it wasn't there. You're finally looking at it, and rehave clearly is looking at the status element and saying that this is a part of 922G, and that court should be charging juries, it seems to me, and also that element needs to be proven. So the government's argument that this is somehow waiving. Waiver, like, in the context of a plea agreement, I would understand, where a waiver is explicit. You're making a knowing decision. Here, there can't be a knowing decision since you didn't have the fact in front of you. Also, the argument is defense counsel should have anticipated the issue and raised it to preserve the record. Perhaps that is the issue, but it's hard to, I would submit that, in the analogy I'm trying to describe, that just because you can't see something, like for instance, in a plea agreement, you have collateral consequences, which are specifically stated so a defendant understands that if something happens in the future, they can't get a benefit. So I think this is a little bit different than that circumstance. This is a person who's exercised their trial right, and the law has changed. The law changes, I guess, you know, you don't anticipate the law changing in this way? Well, I think, well, the argument we're making is that this is the way it always had been, and maybe that's too, you know, fine of a point, but that's, you know, the position that we're taking, and it just seems unfair, or if you look at due process, to say that because a lawyer can't imagine, you know, what nine justices of the Supreme Court do at a point in time, that somehow this relief is not included, especially if going forward, that every litigant could get the benefit of this, of this status element. What's the standard of review for the Rahaf claims? Yeah, in this instance, you know, I was debating it and thinking about it, Your Honor. I think plain error would have to be what we're looking at here, since it wasn't raised, but on the other hand, I would... Why does it rise to that? You've got, you know, a very long criminal history. You have a status on supervised release. You have the evidence submitted by the government at trial. You have, you have a stipulation. Well, I think that there's, that the error is not harmless for these reasons, Your Honor. I think that element actually is a game-changer in terms of, you know, if you look at old chief, you know, basically there was this bargain that was being made, that you're going to stipulate to, you know, that you committed this offense after having a felony conviction, and there was no real reason to challenge it because there was nothing in terms of your subjective viewpoint about it. So, for instance, say I borrow, say someone had me hold a gun, a cousin or something like that, and I had no intent to actually possess it. They were just keeping it in storage in my house. Maybe now, with Rahief, I'm going to, my client may assert that and may discuss that issue, saying that, for instance, like this isn't vicious will, which is what they talk about in Rahief. If we do reach the issue, what is it the jury should have been charged? I think they should have been charged with basically the language that Mr. Figueroa knew he belonged to the relevant category of persons barred from possessing a firearm. What is that category? Well, here would be a person who has a prior conviction of a felony over a year. He knew about it. Yes. Right, that's the difference. Yes. How would he not know about it if he's on supervised release? I'm not saying that... He's on supervised release for it. He was on supervised release for a prior conviction in federal court, Your Honor, a narcotics conviction. A felony conviction. That's correct, Your Honor. I'm not, I do think that goes to the merits. I'm not saying that it's impossible to prove this element, but I do think that it's an element, nonetheless, that has to be proven given the Supreme Court's ruling in Rahief. Your Honor, I do want to move on to a couple other issues with the time that I have. So I'll rest on my brief with respect to the rest of my arguments on this point. I do want to talk about the search here in this case. And in my reply brief, I really was focusing on what I do consider an issue, and maybe this is too colorful language to put it, but the Second, excuse me, the Fourth Amendment has been reduced to sort of a second class amendment. And when I went through the dissents that, you know, Judge Pooler put through and also wrote, and also Justice Sotomayor, you know, really the problem, in a way, if you rely on dissents, they may have all the merit in the world. Judge, it is a problem. But I think sometimes dissents allow us to really think an issue through and to look at what we have been doing. I was reminded of, like, in Texas v. Johnson when William Kunstler said the First Amendment wasn't designed for the speech we love, it was designed for the speech we hate. The search? The search. Well, the search was— There wasn't enough probable cause? We have a video. It looks like the car is illegally parked in a couple different ways, but then you have the testimony of two police officers. What was wrong with that probable cause? What's not enough? The smell of, the odor of marijuana, the outstanding warrant for your client, the running from the car? Where is it that it's not probable cause? Well, Your Honor, it starts, as I see it, with the hunch that Officer Ward says he saw some object that drew his attention to Mr. Figueroa. It's a testimony in the rope that he took. A clip, right? He saw a clip. And that is not sufficient. Really, it starts the whole impetus of all the facts. So that's really what I'm focusing on there. It's not sufficient for what? Well, it's not sufficient for— The whole basis of probable cause. There was a lot of other part of the probable cause before they searched the vehicle. Well, it seemed, from my review of the record, that once they focused on him, then the other things took place. So, like, for instance, in Commonwealth v. Massachusetts, in terms of fleeing, I understand on our jurisprudence, that's a factor that now can be used in the totality of the circumstance. But it's the initial, you know, the observation saying it's a clip, which is an innocuous act. There's nothing in itself that's inherently suspicious or criminal about that, Your Honor. So that's really my focus with respect to the probable cause. I've seen—I've gone over my time, unless there's other questions. You still have three minutes for rebuttal. Thank you. May it please the Court, James McDonald and Joanne Novickis on behalf of the United States, and I do want to thank the panel for rescheduling for this morning. Thank you. This case is about the application of settled Fourth Amendment searches under probable cause of automobiles in a circumstance that is not reasonably disputable based on the video evidence, based on the district court having heard from two officers who gave similar, if not the same testimony, concerning what led to their approach of Mr. Figueroa on the day of his arrest. What do we do—what do we make of the signed depositions of Goddard and Ward? I think the Court can't make any more of them than what multiple defense attorneys on behalf Mr. Figueroa have made of them, which is they put them before the district court, they put them to the witnesses, they tried to extract every possible concession and point of impeachment out of those documents, and the district court heard the explanations, reviewed the video, reviewed the totality of the evidence, and compared those explanations with the full circumstances as it was required to do, and determined that the officers were credible. What Mr. Figueroa is asking here is to take a document from the cold record and to overrule a district court's credibility determination, and it's not a document that was recently discovered, it's not a document that just became available or some video that totally throws the case into a new light. It's a document that everyone has known about since the beginning of the case and has been used. Signed depositions say things that are problematic. It's with respect to one point, one statement in those state court affidavits, which—and not a trivial point, but also not a point that made a significant difference at the end of the day to the probable cause for the state, and not a point that, for instance, advantaged the state or the officers in some other way, allowed them to search some other vehicle or some other home or some other person. It really dealt with just what side of the car was searched, and if you review that video, you could—and this is not in the record—but every single fact that is relevant in this case occurred on the passenger side of that vehicle. Every part of the case, every part of the search, and so the fact that the word passenger side appears in the state court affidavit is, among other things, explainable from that. But the district court heard all of these arguments and heard the explanation, and I will say that Mr. Figueroa is not pointing to other parts of the record that support the officer's explanation, which the district court heard, as to what happened here. Among other things, the other officer, Officer Goddard, who was on scene, testified that what he told, or what Officer Ward told him, was not what had showed up in his affidavit. And so there were at least two officers who said, what was in that affidavit was not what happened. We understand we should have read the affidavits before we signed them, but here's what actually happened. And then you look at the video and everything else about the circumstances, it doesn't change the overall picture, and the district court considered that and gave a very reasoned and thorough opinion, and took time to distinguish other cases, particularly from the state court, where officers had not given credible explanations, had not given definitive statements about what they saw and what they observed. And so you really have here the level of specificity that I think gave the district court comfort to put forward those credibility determinations. With respect to the Raheif issue, I'll briefly address that, understanding that other panels of the court are going to consider it. Even if this wasn't a strategic decision, and for all the reasons in our brief, we've indicated why it was a strategic decision that Mr. Figueroa would not want to put his prior felony status in front of a jury, or in front of the same district judge who was overseeing his supervised release at the time of this trial, even if it wasn't a strategic decision, there's no circumstance under which, if this case was remanded on this basis alone, he would not do the exact same thing, not make the exact same decision. There's no concession from Mr. Figueroa that he's going to make this an issue in a retrial. And that's telling, because to reverse or to vacate a conviction after a jury trial without that type of concession... that he knew, right? Under Raheif, you now do, but because of the stipulation, because of the plain air standard, we submit you don't. It's implicit. And the Ninth Circuit recently addressed the exact same circumstance, found that the stipulation had a much more powerful effect than simply plain air review, found that it effect was waiver, but then went on to consider plain air and said you could never meet the plain air standard, having stipulated and having your stipulation read to a jury in your presence, that you did not know you were a felon. It doesn't include knowledge. That's true, but one must assume that if a defendant signs a stipulation and then agrees to have that stipulation read to a jury about his felony status, he must have been aware of his felony status when that stipulation is read. I think that's the reasoning. You need to be aware of the status at the time you're possessing the gun, not when you are signing the stipulation. That is correct, Your Honor. So what is the evidence that he knew when he was possessing the gun that he wasn't supposed to be possessing the gun? Well, as we've pointed to in this instance, at the time he was possessing the gun, he'd already had two modifications from Judge Ross in the district court of a supervised release. He had two prior state felonies. The government's going to ask for a stip that also includes knowledge at the time of the possession? Yes, I certainly think that going forward that that would be the best practice, but in this case, I think given the circumstances, it's not meaningfully disputable. I'm happy to address any of the additional arguments raised by the appellant if the court has, but if there are no further questions, I'm happy to reserve the thing. On the standing issue, why does the figure overlap standing? With respect to this particular SUV, and this was an important point, and it is often the case that a district court will assume standing for purposes of addressing what it sees as a clear issue, and that's what the district court did here, but if the record had been developed and if Mr. Figueroa had put forward any evidence in support of his motion, an affidavit, a statement of ownership, even just a claim that everything that was in the vehicle was mine without any specifying that was my firearm, those were my stolen credit cards, we would have some basis on which to contest and oppose this motion. That never happened, and so what the evidence the government put forward showed was that actually this car belonged to the other occupant's mother. She was out of state in Georgia, I believe. Mr. Figueroa had just moved the car for a couple of seconds to get it from the middle of traffic over to the front of the fire hydrant, so there was not really a circumstance where he had any expectation of privacy in some other person's mother's vehicle that he moved for possession and control of the car. He does have possession and control of the car, but with the automobile exception in particular, one of the reasons for the automobile exception is that the courts have consistently recognized a reduced expectation of privacy in automobiles, and this is that kind of circumstance, because at the end of the day, if a person gets into someone else's car, a borrowed car, they can't possibly say, I have the same expectation and belief as if I got into my own car. If the occupant of the car had consented to the search of the car, if the officers had known at the time it was actually that occupant's mother's car, Mr. Figueroa wouldn't have standing to challenge that. It's not his vehicle. Are you arguing that because he fled from the car, he didn't have standing to? In addition to that, yes, your honor, once he fled from the vehicle, and we've cited cases to that effect, he abandoned any claim that he had to anything that he was fleeing from, and that's established with other individuals who flee from the area of a search, and it's usually, again, in the automobile context, not in the context of a home, and so there are special circumstances here, certainly because it is an automobile because of the flight, because it's not his car, it's some other person's car who's out of state, and that leads ultimately, because the district court didn't consider the merits of that argument and simply assume that argument, we're left then with the probable cause determination that was made. It was a strong determination. It was a determination based on the records supported by the facts, but at the end of the day, there are multiple bases on which the district court's opinion and the judgment here should be affirmed, and we strongly urge affirmance of the judgment. Thank you. A couple of points, Your Honors. First, with respect to the concession, this case has a couple of things that I think are unusual in terms of pro se submissions, and also we have an ineffective assistance of counsel argument, so to say that Mr. Figueroa would not change strategies if we were to go back, I think really goes too far. He's complained about Mr. Womack not being called in to testify. He's complained about the fact that officers, as he sees it, were not cross-examined vigorously enough about Womack's possession, so I do think to say that somehow our position would remain the same goes too far, and I think that we have evidence of that because of his submissions that show his clear intent to do something different if this case goes back. Ineffective assistance of counsel, the Supreme Court has clearly signaled a preference for raising it in, at least at the start, in habeas proceedings rather than on direct appeal. I recognize that, Your Honor, and I won't really speak much more on that issue. Suffice to say we've addressed it here, but I do think it just goes, I want to use the argument more or less in terms of the concession issue. I do think that here we have a litigant, a defendant, who has a very different viewpoint about the strategic decisions that were made in a prior time. I do want to make one, I made a misstatement. I said Commonwealth versus Massachusetts, Commonwealth versus Warren. That's the flight case. It's an interesting case showing that, you know, African Americans may have a different viewpoint about police activity and why, you know, that in and of itself should not be looked on as a factor to determine that somehow probable cause exists knowing the bias that happens in police enforcement. I also, in terms of standing, we've also cited cases that support that leaving a car does not result in the individual giving up standing. Here, it's important to note the car was parked. So this is not a situation where someone sort of fled a running car. This was a car that's parked at that point. So to say that he was fleeing or running, he was fleeing the scene or leaving evidence, that's not the case. The evidence was already sitting there, parked. I see my time is close to ending. I do have a couple more points. With respect to the issue on sufficiency, suffice to say that our arguments really rest mostly on what happened with respect to the suppression hearing. And I just wanted to say this in closing. About that, the hunch that we saw, you know, what we're trying to really illustrate is that, you know, here's just a person putting an object in a car and that starts a whole point of police inquiry. And that is not sufficient. It shouldn't be sufficient for anyone. So we really are focusing on that. This is something that the courts really should, in our view, push back on in terms of accepting police practices. And, for instance, they use the term high-crime neighborhood. That's, in my view, sort of code language for we can sort of not really push so hard for constitutional rights here. That's, you know, things a little bit more open and free. And we can't have two standards of constitutional governance in our country. Thank you. Thank you both for your arguments. The court will reserve decision.